**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| UZAIR RIAZ, | : | Case No. 1:24-cv-598 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| SECRETARY, DEPARTMENT OF STATE, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

_____

### ORDER AND OPINION
_____

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 6). Plaintiff filed a Response in Opposition (Doc. 7), to which Defendants filed a Reply in Support (Doc. 12). Thus, this matter is ripe for the Court's review. For the reasons below, Defendants' Motion to Dismiss (Doc. 6) is **GRANTED**.

### ALLEGED FACTS

Plaintiff Uzair Riaz is a citizen of Pakistan who came to the United States in 2015 on an F-1 visa to pursue a college education. (Compl., Doc. 1, ¶¶ 24-25.) After completing his studies, Plaintiff changed his status to an H-1B nonimmigrant worker and began work as an engineer. (*Id.* at ¶ 26.) On June 22, 2024, Plaintiff traveled to Pakistan. (*Id.* at ¶ 27.) To return to the U.S., Plaintiff again filed for an H-1B visa through the U.S. embassy in Pakistan. (*Id.* at ¶¶ 28-29.) A few weeks later, the embassy emailed Plaintiff a refusal of his application pursuant to Section 221(g) of the Immigration and Nationality Act

("INA"), explaining that his case needs further administrative processing and requested that Plaintiff provide additional documents. (*Id*. at ¶ 30.) Plaintiff submitted the requested documents on July 25, 2024. (*Id*. at ¶ 31.) When Plaintiff later reached out to the embassy for an update, he was told that his application "is still undergoing mandatory administrative processing." (*Id*. at ¶ 34.)

### PROCEDURAL HISTORY

Plaintiff filed his Complaint on October 21, 2024, against Defendants Secretary of State, Antony Blinken; Consul General U.S. Embassy, Islamabad, Jayne Howell; and John Does 1-10, each sued in their official capacity. (Compl., Doc. 1.) Plaintiff seeks a writ of mandamus directing Defendants to adjudicate Plaintiff's visa application, as well as relief under the Administrative Procedure Act ("APA"), directing Defendants to adjudicate Plaintiff's application. (*Id*.) Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim on January 14, 2025. (Motion, Doc. 6.)

### LAW & ANALYSIS

Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Motion, Doc. 6.) The Court will first consider Defendants' Motion as it applies to Rule 12(b)(1).

### I. Motion to Dismiss Under Rule 12(b)(1)

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims. (Motion, Doc. 6, Pg. ID 66-73.) Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction by raising a facial attack or a factual attack. *Golden v. Gorno. Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

A facial attack "questions merely the sufficiency of the pleading" in alleging subject-matter jurisdiction, and the Court takes the allegations raised in the complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Alternatively, "[i]n the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." The plaintiff bears the burden of proving that jurisdiction is proper. *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Defendants bring both a facial and factual challenge to jurisdiction. (Motion, Doc. 6, Pg. ID 65.)

### a. Consular Non-reviewability

As an initial hurdle, Defendants argue that this Court does not have jurisdiction under the doctrine of consular non-reviewability. (Motion, Doc. 6, Pg. ID 69.) "Visa decisions, as a general matter, fall within the domain of the Legislative and Executive Branches." *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021). Accordingly, "[t]he admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 670 (2018) (quotation omitted). "Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952)). Thus, "the action of an executive officer to admit

3

or to exclude an alien is final and conclusive." *Id.* at 908 (quotations omitted). There is no exception to this rule "unless expressly authorized by law." *Id.* (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). The INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Id.*

Defendants argue that since Plaintiff was issued a Section 221(g) denial, this denial is unreviewable. (Motion, Doc. 6, Pg. ID 69-70.) Defendants' position heavily relies on *Baaghil v. Miller*, 1 F.4th 427 (6th Cir. 2021). (*Id.*) There, a husband was a lawful resident of the United States. *Baaghil*, 1 F.4th at 430. His wife and children, however, were Yemeni citizens living in Malaysia. *Id.* at 430-431. The husband filed visa applications on behalf of his wife and sons to bring them to the United States. *Id.* at 431. But, the applications were denied under Section 221(g) because the U.S. consulate had identity concerns over the family. *Id.* at 434. As the family gathered more evidence to prove their identification, the applications were placed on administrative processing. *Id.* at 431. The husband's visa application was then sent to a U.S. Citizenship and Immigration Services ("USCIS") office for review on whether the application process should continue. *Id.* The Sixth Circuit ultimately declined to review the claims of the wife and sons, determining that "consular non-reviewability applies in full force," towards the noncitizens as "[n]oncitizens living abroad do not have any American constitutional rights." *Id.* at 432-433.

The Court acknowledges that the facts of *Baaghil* closely mirror the current matter. *Baaghil*, however, is distinguishable as the plaintiffs were challenging the decision to deny their visas, thus precluding the Sixth Circuit from reviewing their claims. *Baaghil*, 1 F.4th

at 432. Plaintiff here is not asking the Court to second guess his Section 221(g) denial, but instead alleging that Defendants have unduly delayed making a final decision on his visa application. (Compl., Doc. 1, ¶ 56.) Thus, *Baaghil* is not controlling and consular non-reviewability is inapplicable. *See Omar v. Blinken*, 756 F. Supp. 3d 520, 531 (S.D. Ohio 2024) (finding jurisdiction over the plaintiff's claim to "compel the consul to make a decision on their visa applications" after a Section 221(g) denial; *Gonzalez v. Offutt*, No. 1:23-CV-547, 2024 U.S. Dist. LEXIS 99950, at *10 (S.D. Ohio June 5, 2024); *Igal v. United States Consulate Gen. in Johannesburg*, No. 2:23-CV-4160, 2024 U.S. Dist. LEXIS 101758, at *23 (S.D. Ohio June 7, 2024).

### b. Failure to Act

Defendants also argue that this Court lacks jurisdiction because Plaintiff cannot demonstrate that the consular officer failed to satisfy any duty after issuing a Section 221(g) denial. (Motion, Doc. 6, Pg. ID 66.) Plaintiff brings claims under both the Mandamus Act and the APA. (*See* Compl., Doc. 1.) "When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards . . . to determine jurisdiction." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004). To invoke jurisdiction under the APA, a plaintiff must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. *See Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 441-42 (6th Cir. 2022) (citations omitted). "Mandamus jurisdiction is available only if (1) the plaintiff has exhausted all available administrative appeals and (2) the defendant owes the plaintiff a 'clear nondiscretionary duty' that it has failed to perform." *Your Home Visiting Nurse*

5

*Servs. v. Sec'y of HHS*, 132 F.3d 1135, 1141 (6th Cir. 1997) (citation omitted). "Thus, for jurisdiction to lie under both the APA and Mandamus Act, . . . Plaintiff must show that USCIS owed a non-discretionary duty to him and that it failed to act upon this duty." *Muminov v. Sessions*, No. 1:18-CV-1034, 2018 U.S. Dist. LEXIS 183479, at *9 (N.D. Ohio Oct. 24, 2018).

The parties do not dispute that Defendants have a duty to review and render a decision on Plaintiff's visa application. (Compl., Doc. 1, ¶ 43; Motion, Doc. 6, Pg. ID 66.) The issue instead is whether the Defendants satisfied this duty by issuing Plaintiff a Section 221(g) denial and placing the application in administrative processing. From Plaintiff's perspective, nothing short of a full adjudication of his application is sufficient. (Response, Doc. 7, Pg. ID 88.) Defendants, on the other hand, believe that a Section 221(g) refusal is sufficient to meet their obligation. (Motion, Doc. 6, Pg. ID 66.) In making a determination, the Court acknowledges that there is a "tremendous split in authority on the issue . . . and [c]ourts across the Circuits, and even within this Circuit, have ruled inconsistently." *Amir Abdulmonem Sankari v. United States Dep't of State*, 2:24-CV-12975, 2025 U.S. Dist. LEXIS 103480, at *19 (E.D. Mich. May 30, 2025).

To answer this question, Defendants point to the applicable regulatory framework. Defendants rely on 22 C.F.R. § 41.121(a), which provides that "[n]onimmigrant visa refusals must be based on legal grounds, such as . . . [Section] 221(g)." Furthermore, "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa

6

under INA 212(a) or 221(g) or other applicable law." 22 C.F.R. § 42.81(a). As Defendants

have denied Plaintiff's visa application under Section 221(g), they argue that they have

fulfilled their duty. (Motion, Doc. 6, Pg. ID 66.) Any further action by Defendants would

thus be a re-adjudication. (*Id.*) After all, this argument has found some traction with this

Court. In *Omar v. Blinken*, 756 F. Supp. 3d 520 (S.D. Ohio 2024), the plaintiffs filed for visa

applications, but they received a Section 221(g) denial, and their applications were placed

in administrative processing. 756 F. Supp. 3d at 527. To determine whether this denial

was sufficient, the Court conducted a plain reading of Sections 42.81(a) and 42.121(a) to

conclude that "a refusal under [Section] 221(g), is all that the regulations require." *Id.* at

533 (while finding jurisdiction on alternative ground); *Andrews v. United States Dep't of

State*, No. 3:24-CV-1675, 2025 U.S. Dist. LEXIS 93599, at *7 (N.D. Ohio May 16, 2025).

This Court, however, has also previously adopted Plaintiff's argument. Similar to

the facts here, in *Gonzalez v. Offutt*, the USCIS refused the plaintiff's visa application

under Section 221(g), then placed the application on administrative processing for further

review. 2024 U.S. Dist. LEXIS 99950, at *9. In reaching its conclusion, the Court examined

the Departments of State and Homeland Security's practices about administrative

processing, considering it an intermediary step in the application process. *Id.* (citing *Nine

Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*,

168 F. Supp. 3d 268, 283 (D.D.C. 2016)). Moreover, visas placed in administrative

processing, unlike those that were completely denied, are not reported to Congress. *Id.*

Accordingly, the Court reasonably inferred "under this process that the forthcoming

decision is actually the final adjudication of the visa application, and not a re-

adjudication." *Id.* (quotation omitted); *see also Kerry*, 168 F. Supp. 3d at 287 (determining "that any [p]laintiff with an application in 'administrative processing' has not yet received a final decision.") "So, in practice, administrative processing serves as a prerequisite to reaching the final decision itself." *Igal*, 2024 U.S. Dist. LEXIS 101758, at *20 (quotation omitted). As the Sixth Circuit has not yet addressed this matter, the Court will mirror its reasoning in *Gonzalez* and again find that a Section 221(g) denial is insufficient to satisfy Defendants' nondiscretionary duty to act on Plaintiff's visa application. Accordingly, the Court has subject matter jurisdiction over Plaintiff's claims.

## II.    Motion to Dismiss Under Rule 12(b)(6)

Having found jurisdiction over this matter, the Court now turns to Defendants' motion to dismiss this case under Rule 12(b)(6). The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

8

As noted above, Plaintiff brings claims for unreasonable delay under the APA and mandamus relief. (Compl., Doc. 1.) Defendants move to dismiss both claims. (Motion, Doc. 6.) "When a [plaintiff] seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson*, 107 F. App'x at 471. Thus, the Court considers Plaintiff's claims together.

### a. The *TRAC* Factors

The APA allows the Court to compel agency action that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To determine whether an agency's delay in taking required action is unreasonable, the Court applies a six-factor test. *See Garcia*, 25 F.4th at 451-52 (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)). The Sixth Circuit has described these *TRAC* factors as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.*

Plaintiff maintains that the Court cannot consider the *TRAC* factors at the pleading stage. (Response, Doc. 7, Pg. ID 97-97.) To be sure, "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage." *Garcia*, 25 F.4th at 451 (quotation omitted). That said, courts within this circuit have routinely considered the *TRAC* factors at the motion to dismiss stage when the pleadings provide enough information to analyze the relevant factors. *See, e.g., Omar*, 756 F. Supp. 3d at 535; *Preston v. Ky. Consular Ctr.*, No. 6:22-CV-15, 2022 U.S. Dist. LEXIS 150019, at *59-75 (E.D. Ky. Aug. 22, 2022); *Telukunta v. Mayorkas*, No. 2:21-CV-10372, 2021 U.S. Dist. LEXIS 111676, at *4-8 (E.D. Mich. June 15, 2021). As shown below, Plaintiff's Complaint contains sufficient facts to permit this Court to consider the *TRAC* factors at the pleadings stage. The Court will consider the *TRAC* factors accordingly.

### i. Factors One and Two

"The first *TRAC* factor—that the time agencies take to make decisions must be governed by a rule of reason—is considered the most important." *Ebrahimi v. Bitter*, No. 3:22-CV-788, 2023 U.S. Dist. LEXIS 98199, at *13 (M.D. Tenn. June 6, 2023) (quotations omitted). The second *TRAC* factor asks whether Congress has provided a timetable that "may supply content for this rule of reason." *TRAC*, 750 F.2d at 80. The Court may review these factors in tandem. *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *13. "The inquiry centers on whether the agency's response time . . . is governed by an identifiable rationale." *Id.* (citation omitted).

Here, Congress has not provided a specific timetable by which Defendants are required to make a final determination on Plaintiff's application. *Al-Obaidi v. Blinken*,

No. 3:24-CV-419, 2024 U.S. Dist. LEXIS 191877, at *14 (M.D. Tenn. Oct. 2, 2024). In fact, "Congress has given the agencies wide discretion in the area of immigration processing." *Id.* (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017)).

Nevertheless, Plaintiff argues that 8 U.S.C. § 1571(b) mandates a 30-day window for nonimmigrant visas to be processed. (Compl., Doc. 1, ¶ 46.) This argument lacks merit. Section 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." As several courts have found, this provision "lacks any compulsory language to interpret it as a legal requirement." *Telukunta*, 2021 U.S. Dist. LEXIS 111676, at *5-6 (collecting cases). Thus, the Court cannot give Section 1571(b)'s timeline binding effect here.

Instead, courts have found that "delays in excess of five, six, or seven years are unreasonable, while those between three or five years are often not unreasonable." *Ahmed v. Blinken*, No. 23-11860, 2024 U.S. Dist. LEXIS 164524, at *12 (E.D. Mich. Sep. 12, 2024). Here, Plaintiff's alleged undue delay has not even spanned four months. (Compl., Doc. 1, ¶¶ 33, 67.) This timeframe falls dramatically short compared to what courts consider to be unreasonable. Thus, these factors weigh against Plaintiff.

### ii. Factors Three and Five

The third and fifth *TRAC* factors address the delay' s effect on the visa applicant. Under the third factor, the Court must consider that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are

11

at stake." *TRAC*, 750 F.2d at 80. The fifth factor "take[s] into account the nature and extent of the interests prejudiced by delay." *Id.* The analysis of these factors often overlaps. *Telukunta*, 2021 U.S. Dist. LEXIS 111676, at *6 (citation omitted).

Plaintiff alleges that the delay in the adjudication of his visa application has harmed his professional life. (Compl., Doc. 1, ¶¶ 37-38.) He claims that working remotely from Pakistan has put his employment in jeopardy and that working during American time zones while abroad has impacted his sleep. (*Id.*) While the Court sympathizes with Plaintiff's hardships, they "are interests shared by virtually every applicant whose visa application has been delayed." *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *17. Visa processing "is inherently a zero-sum game, as processing one category of immigrant visas necessarily results in the diminished resources for processing another category of visas." *Preston*, 2022 U.S. Dist. LEXIS 150019, at *69 (quotation omitted). Thus, Plaintiff's hardships "do not weigh strongly or override the others that weigh against him, particularly in light of the fact that bumping [Plaintiff] to the head of the line would simply increase the delay for someone else in a similar personal, financial, and political situation." *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *17.

Because Plaintiff's situation presents health and welfare stakes, but the requested remedy "functions to the detriment of other . . . visa applicants," the Court finds that factors three and five are neutral. *Preston*, 2022 U.S. Dist. LEXIS 150019, at *70.

### iii. Factor Four

The fourth *TRAC* factor requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at

80. "The practical effect of granting Plaintiff relief would allow [him] to cut to the front of an already-long line of visa applicants." *Telukunta*, 2021 U.S. Dist. LEXIS 111676, at *7. "Allowing Plaintiff to cut the line would create a zero-sum game that delays the adjudication of visa applicants already ahead of Plaintiff in the queue." *Id.* (citing *Patel v. Cuccinelli*, No. 6:20-CV-101, 2021 U.S. Dist. LEXIS 3793, at *10 (E.D. Ky. Jan. 8, 2021) ("Moving any application to the front of any line for processing would necessarily move others in that line back a space.")). "Indeed, the Sixth Circuit has declined to find unreasonable delay due to a 'general backlog' of visa applications and noted that 'plaintiffs cannot jump the line by simply requesting mandamus or other relief.'" *Id.* (quoting *Hussein v. Beecroft*, 782 F. App'x 437, 443-44 (6th Cir. 2019)).

Plaintiff argues that since Defendants have not provided evidence that visa applications are processed in a linear order, that this inference is improper. (Response, Doc. 7, Pg. ID 103.) Whether a line exists, however, is inconsequential to the analysis. Requiring Defendants to redirect resources to review Plaintiff's application could still harm other applicants. *See Chhajed v. Jaddou*, 2:23-CV-483, 2024 U.S. Dist. LEXIS 55064, at *20 (S.D. Ohio Mar. 27, 2024) (finding the fourth factor to weigh in the defendants' favor even when the "'line cutting' rationale may not be supported by the facts"). Plaintiff asks the court to set "a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer. Such a situation hardly optimizes resources and serves only the individual at the detriment of the group." *Al-Obaidi*, 2024 U.S. Dist. LEXIS 191877, at *14 (quoting *Dmitrenko v. Chertoff*, No. 1:07-CV-82, 2007 U.S. Dist. LEXIS 61206,

13

at *3-4 (E.D. Va. Apr. 30, 2007). Thus, the fourth *TRAC* factor favors Defendants.

####    iv.   Factor Six

The sixth *TRAC* factor notes that the Court "need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Plaintiff's Complaint does not allege any bad faith on the part of Defendants. Thus, the sixth factor is neutral. *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *18-19.

Since the *TRAC* factors ultimately favor Defendants, Plaintiff has not alleged an unreasonable delay for either his mandamus request or APA cause of action. Accordingly, Plaintiff's claims must fail.

### CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss (Doc. 6) is **GRANTED** and Plaintiff's Complaint is **DISMISSED.** The case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

14